UDOLPHO V. SAGE & another *vs.* ALFRED H. LIPPINCOTT & another.

Suffolk. December 16, 1897. — February 23, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Use and Occupation — Agency — Contract — Partnership — Action.*

If A. makes a contract with B., who is his agent for the sale of his goods, and who is also a member of a partnership into the business of which he turns the proceeds of his agency, to pay a certain sum as rent for premises used by B. as showrooms for A.'s goods, and which are a part of the premises occupied by the firm for its business, the firm, with which A. has had no dealings, cannot maintain an action against A. for use and occupation of the premises.

CONTRACT, for use and occupation of certain premises in Boston, for the months of February and March, 1896. Trial in the Superior Court, without a jury, before *Braley*, J., who allowed a bill of exceptions, in substance as follows.

For several years prior to January 1, 1895, one F. E. Sage, a brother of the plaintiffs, was agent of the defendants to sell soda fountains for them. On March 15, 1894, F. E. Sage formed a copartnership with the plaintiff U. V. Sage, under the firm name of Sage Brothers, for the purpose of carrying on the business of bottlers and druggists' supplies; and on January 1, 1895, the plaintiff W. H. Sage was admitted as a partner in the firm. It was agreed at that time by the plaintiffs and F. E. Sage that the proceeds of the agency should be turned into the business of the copartnership. Nothing further was said in reference to this agency at that or any subsequent time. The plaintiffs never had any communication whatever

with the defendants in reference to the matter. The evidence showed that the agency was carried on for the benefit of the copartnership up to February 1, 1896. During the continuance of the copartnership, which was until February 1, 1896, all business and arrangements with the defendants in reference to the agency were made by F. E. Sage. Previously to and at the time of the formation of the copartnership in March, 1894, there was an agreement between the defendants and F. E. Sage, whereby the defendants agreed to pay and did pay $35 per month toward the rent of the premises occupied by F. E. Sage as showrooms for their soda fountains; and after the formation of the copartnership, the amount so paid by the defendants was increased to $50. At that time the copartnership occupied the premises numbered 28 Portland Street, and a portion of the premises was used as showrooms for the soda fountains. Later it became desirable to secure larger quarters, and the firm of Sage Brothers leased the premises at No. 8 Portland Street. A copy of the lease signed by the three members of the firm of Sage Brothers was introduced in evidence by the plaintiffs. A part of the premises at No. 8 Portland Street were used as showrooms for the soda fountains.

F. E. Sage then wrote to the defendants as follows:

"In reply to yours of the 8th in regard to rentals, will say that, inasmuch as all improvements and enlargements have been solely for the benefit of the said apparatus business, and also fixtures and outlay have been for the same purpose, I thought that there would be no question but you will be willing to stand one half of same. The rental at No. 28 Portland Street was raised at two different times. I still did not ask you to pay only the amount of $35, where I was paying considerable more. The subject was first mentioned to you about enlarging for a showroom for apparatuses. You then suggested that it would be much better if we could have the whole business together; as it was impossible at that time to do so I went to the expense of fitting up (which was over $200) besides moving apparatus to the fifth floor. I found there were several drawbacks to having the showroom so far from the street. It was detrimental to the sale of the apparatus. This was the reason that I took the liberty of making the change to the present loca-

tion. The rental before moving to No. 8 was $1,600, and it would make but an additional expense of $33.33 more than where we were at No. 28.

"I am willing to abide by any decision you may make, but feel that, in justice to myself, and inasmuch as I desire to push the trade in apparatuses as much as possible, and that you will be benefited by the change as much as myself, if not more, that you would be willing to stand expense as previously stated."

To this the defendants, on August 14, 1895, replied as follows: "Your favor of the 8th inst. is received. We have noted the same and have given the matter our careful consideration. You will please remember that the move which you made lately is not one with our sanction, but one which was simply made and of which we were advised after it was done. This incurred an additional expense, and on account of the letter which we wrote you some time since it appears to us that the risk which was taken, the extra amount which was incurred, and the matter as it stands now, was negotiated by yourself, so that really we are not responsible. However, in order to help the matter out, while we may not be willing to do the full extent of which you require, we are willing, as we understand the matter, to do the following: we at the present time pay $50 per month rent and you ask us to pay $83.33, and we are willing to pay $75 per month if our construction of the matter is correct. We think this is fair, and we are perfectly willing the matter shall be settled on this basis, so that we hope we may hear from you quite soon to adjust everything to our mutual satisfaction without delay."

The plaintiff U. V. Sage, who was the principal witness for the plaintiffs, testified, in cross-examination, that it was on this letter that he based his right to bring this action.

Until February 1, 1896, a large portion of the premises at No. 8 Portland Street were used as showrooms for the soda fountains, and the defendants sent F. E. Sage the sum of $75 each month, in accordance with the terms of the above letter, which sum was turned by F. E. Sage into the firm of Sage Brothers.

On February 1, 1896, the plaintiffs and F. E. Sage dissolved the copartnership, the plaintiffs taking and carrying on the business of bottlers and druggists' supplies, and also acting

under an order of court as liquidating partners of the dissolved firm. The plaintiffs also purchased the unexpired term of the lease. F. E. Sage continued the agency for the defendants, and for the months of February and March, 1896, the portion of the premises at No. 8 Portland Street, formerly used as showrooms, continued to be so used.

The defendants requested the judge to rule as follows:

" 1. The plaintiffs cannot recover in this action. 2. The evidence is not sufficient to show that the defendants made any actual agreement with the plaintiffs to pay the sum of $75, or any sum per month, for rent of the premises at No. 8 Portland Street. 3. The evidence shows that F. E. Sage was the agent of the defendants to sell their goods, that he made all contracts for rent and other expenses on his own account, and that the defendants agreed with F. E. Sage to refund to him a certain percentage of the accounts paid out for rent and other expenses. 4. The evidence does not show that there ever was any privity of contract between the plaintiffs and the defendants. 5. There is no evidence to show that the defendants ever consented to become liable to any one except F. E. Sage for any of the expenses incurred in the sale of their goods. 6. After the goods were consigned to F. E. Sage and accepted by him, the defendants ceased to be liable for their storage without some express agreement between the plaintiffs and the defendants. 7. The evidence shows that the defendants are not liable for the rent in this case, unless made liable through the acts of F. E. Sage acting as their agent. 8. There is no evidence sufficient to show that F. E. Sage had any authority to bind the defendants in such a case to pay rent. 9. The evidence is not sufficient to show that F. E. Sage ever attempted to make any express agreement to pay rent to the plaintiffs acting as agent for the defendants. 10. The evidence does not show any act of F. E. Sage sufficient to render the defendants liable in this suit."

The judge refused so to rule, and found and ordered judgment for the plaintiffs; and the defendants alleged exceptions.

*H. N. Shepard*, ( *O. Storer* with him,) for the defendants.

*R. W. Frost*, for the plaintiffs.

KNOWLTON, J. The bill of exceptions in this case states the facts, together with certain documentary evidence, and shows

numerous requests for rulings which the judge refused. The trial was before a judge without a jury. The requests seem to have been made, and the bill of exceptions seems to have been drawn and allowed upon the assumption that the facts stated were the only ones material to be considered in passing upon the questions of law which were raised at the trial.

One F. E. Sage, a brother of the plaintiffs, was the agent of the defendants to sell soda fountains in Boston. He hired a place of business, and the defendants paid him something on account of the benefit which they received from the use of it. While he was their agent to sell their goods, there is nothing to show that he was their agent to hire a place of business on their account. Indeed, the lease of the premises for the use and occupation of which this suit was brought was made to a firm consisting of F. E. Sage and the plaintiffs, and the place was held and used by the firm in carrying on the partnership business. The correspondence plainly shows that F. E. Sage was not acting as the agent of the defendants in hiring the place, and that their only liability to pay anything for the benefit which they received in the sale of their goods was not as tenants, but under a special contract with him to allow him seventy-five dollars per month on account of the use of the place which he furnished. The entire rent of the premises occupied by the Sage Brothers, in which F. E. Sage sold the defendants' goods, was $166.66 per month. The defendants had no dealings with the plaintiffs. Although F. E. Sage turned into the business of Sage Brothers the profit from his business as agent of the defendants, his agency was personal, and Sage Brothers as a firm had no authority to represent the defendants. The defendants' agreement to pay him seventy-five dollars per month for the use of the premises was with him alone, and he could not transfer it to the plaintiffs or to the firm of Sage Brothers when he was a member of it. So far as appears, the defendants never knew of the existence of such a firm. F. E. Sage as an individual wrote to them in regard to the arrangement which he had made to procure a place for carrying on the business in which they were interested. In his letter he expressly disclaimed authority from them to bind them by his action, but asked them to pay him one half of the rent which he paid, say-

ing at the same time, " I am willing to abide by any decision you may make." They replied declining to pay him one half, and agreeing to pay seventy-five dollars per month. This constituted a contract with him as an individual, to pay him for premises which he procured on his own account, so far as the defendants knew. What his relations were with the plaintiffs was a matter of which they had no knowledge, and in which they had no interest. Their liability for the use of the premises is to F. E. Sage, and the claim of the plaintiffs, if they have any which can be enforced, is against him, and not against the defendants.                    *Exceptions sustained.*